CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiff
Hunter Killer Productions, Inc.,

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Hunter Killer Productions, Inc., <br><br> Plaintiff, <br> vs. <br><br> GERARD PRADO and DOES <br><br> Defendants. | **Case No.: 1:19-cv-323** <br> (Copyright) <br><br> **COMPLAINT; EXHIBITS 1-2** <br><br> **(1) DIRECT COPYRIGHT INFRINGEMENT** <br><br> **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

## COMPLAINT

Plaintiff Hunter Killer Productions, Inc. files this Complaint against

Defendants GERARD PRADO and DOES and alleges as follows:

### I.   NATURE OF THE ACTION

1.   This matter arises under the United States Copyright Act of 1976, as

20-017C

amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.      The Plaintiff alleges that Defendants are liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.  As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents reside or may be found in this District.

## III.      PARTIES

2

20-017C

## A.  The Plaintiff, Hunter Killer Productions, Inc.

6.      The Plaintiff Hunter Killer Productions, Inc. ("Hunter Killer") is a

corporation organized and existing under the laws of the State of Nevada.

7.      Hunter Killer is the owner of the copyright for the motion picture in

the Work "*Hunter Killer*", (hereafter: the "Work") a major motion picture released

in 2018.

8.      The Work is an action movie starring Gerard Butler, Gary Oldman,

Common, and Linda Cardellini.  The Work tells the story of American submarine

Captain Joe Glass on the hunt for a U.S. submarine in distress when he discovers a

secret Russian coup which threatens to dismantle the world order.

## B.  The Defendants

9.      The Defendants are members of a group of BitTorrent users or peers

whose computers are collectively interconnected for the sharing of a particular

unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm

is associated with has a unique "hash" number, which in this case is: SHA1:

57537D93A76F574369DC2E573E99C3840A9FD89D       (the      "Unique      Hash

Number").  The file name is Hunter Killer (2018) [WEBRip] [1080p] [YTS.AM].

10.     Upon information and believe, Each of the Defendants received from

Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium

Copyright Act ("DMCA notice") requesting the individual to stop infringement of

20-017C

the Work or other Works via BitTorrent protocol.

11.     Upon information and belief, Defendant GERARD PRADO is an adult male over 21 years of age and a resident of Honolulu County.

12.     GERARD PRADO is a Verizon subscriber assigned the following five Internet Protocol (IP) addresses: (1) 174.239.2.92 on 2019-03-12 14:55:42; (2) 174.239.3.63 on 2019-03-12 14:44:18; (3) 174.239.2.150 on 2019-03-12 13:56:07; (4) 174.239.0.216 on 2019-03-12 13:08:06; and (5) 174.239.0.102 on 2019-03-12 11:10:38 by Internet Service Provider ("ISP") Verizon.

13.     An IP address is a number that is assigned by the ISP to devices, such as computers or cell phones, that are connected to the Internet.

14.     Defendant GERARD PRADO was confirmed consistently downloading, copying and/or sharing copies of the Work via the Unique Hash Number at the five IP addresses at least 32 times.

15.     Defendant GERARD PRADO used a computer device connected to Verizon's cellular phone Internet service.   Because Verizon's cellular phone Internet service was used, it is highly unlikely a third party was able to obtain the consistent access for the observed activity through hacking or any other means to the account of Defendant GERARD PRADO.

16.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES are unknown to Plaintiff who therefore sues said

4

Defendants DOES by such fictitious names.  Each of Defendants DOES is known to the Plaintiff only by an IP address at which the alleged infringement took place.  The ISP to which a Defendant subscribes or uses can correlate a Defendant's IP address to a Defendant's true identity.  As shown on Exhibit 1 attached hereto, each of the Defendants' acts of copyright infringement occurred using an IP address traced to a physical address located within this District.  Plaintiff intends to subpoena the ISP that issued the IP addresses in order to learn the identity of the account holders for the IP addresses.  Often the account holder will be a proper Defendant in this case.  However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiff believes that information obtained in discovery will lead to the identification of each Defendants' true names and permit the Plaintiff to amend this Complaint to state the same.  Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as defendants.  Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined.  Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

17.    Plaintiff alleges on information and belief that each of the Defendants

5

20-017C

named herein performed, participated in, or abetted in some manner, the acts alleged

herein, proximately caused the damages alleged herein, and are liable to Plaintiff

for the damages and relief sought herein.

## IV.   JOINDER

18.    Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was

properly joined because, as set forth in more detail below, the Plaintiff asserts that

the infringement complained of herein by each of the Defendants was part of a series

of transactions over the course of a relatively short period of time, involving the

exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the

Defendants acting in concert with each other; and there are common questions of

law and fact.  Further, each of Defendants obtained the torrent file associated with

the Work either directly or indirectly from YTS.

## V.   FACTUAL BACKGROUND

### A. The Plaintiff Owns the Copyright to the Work

19.    The Plaintiff is the owner of the copyright for the motion picture for

the Work entitled "*Hunter Killer*", a major motion picture released in 2018.

20.    The Work is the subject of copyright registration (Registration Number

PA0002136168) for the motion picture, and this action is brought pursuant to 17

U.S.C. § 411.  *See,* Exhibit "2".

21.    The Work is a motion picture which contains original material that is

6

20-017C

copyrightable subject matter under the laws of the United States.

     22.    The motion picture is currently offered for sale in commerce.

     23.    Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore a proper copyright notice.

     24.    Defendants also had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. Defendants Used BitTorrent To Infringe the Plaintiffs' Copyright

     25.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

     26.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants installed a BitTorrent Client onto his or her Computer

7

20-017C

27.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

28.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

29.     Defendants installed a BitTorrent Client onto their respective computer.

30.     Defendant GERARD PRADO had the BitTorrent Client "Show Box" installed on his device in approximately January of 2019.

### 2. The Initial Seed, Torrent, Hash and Tracker

31.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

32.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

33.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

20-017C

34.    When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

35.    Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

36.    The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

37.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

38.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

20-017C

39.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

40.     Upon information and belief, Defendants went to a torrent site to upload and download Plaintiff's copyrighted Work.

41.     Upon information and belief, Defendants went to the torrent site YTS to download Plaintiff's copyrighted Work.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

42.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

43.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

44.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

45.     In this way, all of the peers and seeders are working together in what is called a "swarm."

46.     Here, Defendants participated in the same swarm and directly

20-017C

interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

47.   In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

48.   Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

***5. The Plaintiff's Computer Investigator Identified the Defendants' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Copyrighted Work***

49.   The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

20-017C

50.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

51.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

52.     The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show that Defendants have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number.

53.     The Defendants' computers used the identified IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

54.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

55.     MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

20-017C

## VI. FIRST CLAIM FOR RELIEF

## (Copyright Infringement)

56.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

57.     Plaintiff is the copyright owner of the Work which contains an original work of authorship.

58.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendants copied the constituent elements of the registered Work that is original.

59.     The Plaintiff did not authorize, permit, or provide consent to the Defendants to copy, reproduce, redistribute, perform, or display the Work.

60.     As a result of the foregoing, Defendants violated the Plaintiff's exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as

20-017C

set forth in 17 U.S.C. § 101's definition of "publicly" display.)

61.     Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

62.     By engaging in the infringement alleged in this Complaint, the Defendants deprived not only the producers of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

63.     The Plaintiff has suffered damages that were proximately caused by the Defendants' copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

64.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

65.     By participating in the BitTorrent swarm with others, Defendants induced, caused or materially contributed to the infringing conduct of others.

66.     Plaintiffs did not authorize, permit, or provide consent to the

14

20-017C

Defendants inducing, causing, or materially contributing to the infringing conduct of others.

67.     Defendants knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

68.     The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

69.     By engaging in the contributory infringement alleged in this Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.   The Defendants' misconduct therefore offends public policy.

70.     The Plaintiff has suffered damages that were proximately caused by the Defendants' contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiff respectfully requests that this Court:

20-017C

(A) permanently enjoin Defendants from continuing to infringe the Plaintiff's copyrighted Work;

(B) order that Defendants delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work and the BitTorrent Client from each of the computers under Defendant's possession, custody, or control;

(C) order that Defendants delete and permanently remove the copy of the Work Defendants have on the computers under the Defendants' possession, custody, or control;

(D) award the Plaintiff either its actual damages and any additional profits of the Defendants pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages per Defendant pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, June 24, 2019.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Plaintiff

16

20-017C