CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiff
Hunter Killer Productions, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Hunter Killer Productions, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> AKA WIRELESS, INC. d/b/a VICTRA, and <br> ABC PHONES OF NORTH CAROLINA, INC. d/b/a VICTRA, <br><br> Defendants. | **Case No.: 1:19-cv-323-JAO-KJM** <br> (Copyright) <br><br> **FIRST AMENDED COMPLAINT; EXHIBIT 1; DECLARATIONS OF GERARD PRADO, KAZZANDRA POKINI, NORBERT POKINI AND DANIEL ARHEIDT** <br><br> **(1) INTENTIONAL INDUCEMENT** <br> **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

### FIRST AMENDED COMPLAINT

Plaintiff Hunter Killer Productions, Inc. files this First Amended Complaint against Defendants AKA WIRELESS, Inc. d/b/a VICTRA (hereafter: "AKA"), and ABC PHONES OF NORTH CAROLINA, INC. also d/b/a VICTRA (hereafter: "ABC") (collectively "Defendants") and alleges as follows:

## I. NATURE OF THE ACTION

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2. The Plaintiff alleges that Defendants are liable for intentional inducement and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of specific personal jurisdiction over them.

5. Defendants are registered to conduct business in Hawaii and maintain locations where they conduct business in Hawaii. Accordingly, Defendants' contacts with Hawaii are continuous, systematic, and substantial enough to permit the Court's exercise of general personal jurisdiction over them.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c)

because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents reside or may be found in this District.

### III.   PARTIES

### A.   The Plaintiff, Hunter Killer Productions, Inc.

7. The Plaintiff Hunter Killer Productions, Inc. ("Hunter Killer") is a corporation organized and existing under the laws of the State of Nevada.

8. Hunter Killer is the owner of the copyright for the motion picture in the Work "*Hunter Killer*", (hereafter: the "Work") a major motion picture released in 2018.

9. The Work is an action movie starring Gerard Butler, Gary Oldman, Common, and Linda Cardellini.  The Work tells the story of American submarine Captain Joe Glass on the hunt for a U.S. submarine in distress when he discovers a secret Russian coup which threatens to dismantle the world order.

### B.  The Defendants

10. Defendant AKA is a corporation organized under the laws of South Dakota.

11. Defendant AKA registered the trade name VICTRA with the Hawaii Department of Commerce and Consumer Affairs on or around Oct. 25, 2017, Certificate No. 4,194,174, with the stated purpose of VERIZON PREMIER RETAILER.

12. Upon information and belief, Defendant AKA is doing business in Hawaii under the trade name VICTRA.

13. Defendant ABC is a corporation organized under the laws of North Carolina.

14. Defendant ABC registered the trademark VICTRA with the United States Patent and Trademark Office on April 17, 2018 as Reg. No. 5,450,011 in the classification CLASS 35: Retail store services featuring telecommunication and information technology products and services in the nature of portable electronic devices, mobile phones, smartphones, tablets, mobile hotspot devices, smart watches, portable electronic device accessories, wireless telephone services and plans, technical support services, and device troubleshooting services.

15. On the website https://www.victra.com/about-us.aspx, it is stated, "Victra was founded as a partnership by Richard and David Balot in October 1996 in Wilson, North Carolina. We were incorporated as ABC Phones of North Carolina, Inc. in 1999…" as of December 30, 2019.

16. Upon information and belief, Defendant ABC is doing business in Hawaii under the trade name VICTRA.

17. As of April 1, 2018, GEORGE SHERMAN is the president and a director of ABC.

18. As of April 1, 2018, GEORGE SHERMAN is a director, the president, and Chief Executive Officer of AKA.

19. Upon information and belief, the same individual, GEORGE SHERMAN, is an officer and director of both AKA and ABC.

20. Both AKA and ABC claim rights to the same trademark, namely, "VICTRA".

21. Upon information and belief, Defendants ABC and AKA are alter egos of one another.

22. Upon information and belief, non-party Sabrina Boylan ("Boylan") is an individual over the age of 18 and a resident of El Paso, Texas.

23. Upon information and belief, Boylan was, at the time of the alleged events, and, currently is an employee of a Verizon branded store owned or controlled by either one of or both Defendants AKA or ABC, doing business as VICTRA.

24. As an employee of VICTRA, Boylan sells and has sold telecommunication equipment such as cell phones, tablet devices and/or computing

devices to members of the general public at the VICTRA location in El Paso, TX ("TX Store").

25. As an employee of VICTRA, Boylan assisted in or performed installation and/or set up of said cell phones, tablet devices and computing devices for said members of the general public at the TX Store.

26. Upon information and belief, non-party Taylor Wolf ("Wolf") is an individual over the age of 18 and a resident of Maui County, Hawaii.

27. Upon information and belief, Wolf was, and/or is currently an employee of a Verizon branded store owned or controlled by either one of or both Defendants AKA or ABC, doing business as VICTRA.

28. As an employee of VICTRA, Wolf sells and has sold telecommunication equipment such as cell phones, tablet devices and/or computing devices to members of the general public at the VICTRA location in Kahului, HI ("HI Store").

29. As an employee of VICTRA, Wolf assisted in or performed installation and/or set up of said cell phones, tablet devices and computing devices for said members of the general public at the HI Store.

## IV.   JOINDER

30. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was

6

properly joined because, as set forth in more detail below, the Plaintiff asserts (A) a right to relief against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

## V. FACTUAL BACKGROUND

### A. The Plaintiff Owns the Copyright to the Work

31.  The Plaintiff is the owner of the copyright for the motion picture for the Work entitled "*Hunter Killer*", a major motion picture released in 2018.

32.  The Work is the subject of copyright registration (Registration Number PA0002136168) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "1".

33.  The Work is a motion picture which contains original material that is copyrightable subject matter under the laws of the United States.

34.  The motion picture is currently offered for sale in commerce.

35.  Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore a proper copyright notice.

36.  Defendants also had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and packaging and

copies, each of which bore a proper copyright notice.

### B. Defendants Induced their Customers to Infringe the Plaintiff's Copyright

37. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

38. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

39. A BitTorrent Client is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

40. Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

41. Certain BitTorrent Clients such as Popcorn Time and the Show Box

app ("movie piracy apps") are promoted and designed overwhelmingly for the purposes of copyright infringement.

### 1. *Defendants promoted movie piracy apps to their customers.*

42. Defendants' employees promoted movie piracy apps at VICTRA stores to their customers for the purposes of infringing copyright protected content.

43. Defendants' employees explained to their customers how to use the movie piracy apps installed onto the customers' devices to infringe copyright protected content while the customers were at VICTRA stores.

44. Defendants' customers used said movie piracy apps exactly as explained to them by Defendants' employees – to infringe copyright protected content.

45. Defendants promoted the movie piracy apps to their customers to entice them to purchase particular products and thereby increase their profit.

46. Boylan promoted Popcorn Time to the general public to convince them to purchase services or telecommunication equipment of VICTRA to thereby financially benefit herself and VICTRA.

47. Boylan promoted Popcorn Time by telling members of the general public, including Gerard Prado, that it could be used to watch "free movies" at the TX Store on or around March 5, 2019.

48. Based upon Boylan's encouragement that a Samsung T387 Galaxy

Tablet device could be used to watch free movies, Gerard Prado decided to purchase the Tablet device.

49. Wolf, on or around June 28, 2017, promoted the movie piracy app Show Box app to Hawaii residents Kazzandra Pokini and Norbert Pokini at the HI store on or around June 28, 2017.

50. In an effort to persuade Kazzandra Pokini to purchase a new phone and/or service, Wolf offered Kazzandra Pokini a free tablet with said purchase.

51. When Kazzandra Pokini inquired about the usefulness of the free tablet, Wolf told Kazzandra Pokini that she could use it to watch free movies.

52. Based upon Wolf's statement, Kazzandra Pokini decided to purchase a new phone and receive the free tablet.

***2. Defendants installed movie piracy apps on their customers' computing devices.***

53. Defendants' employees installed movie piracy apps onto their customers' cell phones, tablet devices, computing devices, etc. at VICTRA stores.

54. Boylan installed Popcorn Time on the tablet device of Gerard Prado while he was at the TX Store so that Gerard Prado could watch content in violation of copyright laws (i.e., "free movies").

55. Wolf installed the Show Box app on the tablet of Kazzandra Pokini while Kazzandra Pokini was at the HI store.

56. Wolf showed Kazzandra Pokini and her husband how to use the Show Box app to watch movies while they were at the HI store.

### *3. Defendants' customers used the movie piracy apps to infringe Plaintiff's Works.*

57. Gerard Prado used Popcorn Time on the tablet device to download at least a portion of the Plaintiff's motion picture while he was in Hawaii from the following Internet Protocol ("IP") addresses: (1) 174.239.2.92 on 2019-03-12 14:55:42; (2) 174.239.3.63 on 2019-03-12 14:44:18; (3) 174.239.2.150 on 2019-03-12 13:56:07; (4) 174.239.0.216 on 2019-03-12 13:08:06; and (5) 174.239.0.102 on 2019-03-12 11:10:38.

58. Kazzandra Pokini and her husband used the Show Box app to download copies of copyright protected content.

59. **Defendants knew the movie piracy apps would be used for infringing copyright protected Works.**

60. Boylan knew or had reason to know that using Popcorn Time would result in direct infringement of the Copyrights of specific material.

61. Wolf knew or had reason to know that the Show Box app would cause Kazzandra Pokini to make copies of copyrighted content in violation of copyright laws of the United States.

62. Defendants AKA and ABC had prior notice that one or more of their

employees were promoting and distributing a movie piracy app to customers prior to the time Defendant Boylan promoted and distributed Popcorn Time to Gerard Prado.

63. Particularly, Defendants AKA and ABC knew of allegations with regards to Wolf as a result of prior litigation in this District initiated by Millennium Funding, Inc., an affiliate of Plaintiff.

64. Boylan's and Wolf's conduct of distributing and installing movie piracy apps on customers' devices were consistent with and/or the type of conduct they were employed to perform and, therefore, was within the scope of their employment with VICTRA.

65. Boylan's and Wolf's conduct of distributing and installing movie piracy apps occurred substantially within their authorized work time and within the space limits of the respective Store and, therefore, was within the scope of their employment with VICTRA.

66. VICTRA benefited financially from Boylan's and Wolf's conduct.

67. Boylan's and Wolf's conduct of distributing and installing the Movie Piracy apps was actuated, at least in part, for the purpose of serving VICTRA.

68. Upon information and belief, Boylan herself used or currently uses Popcorn Time to watch content.

69. Victra customers, such as Kazzandra Pokini and Gerard Prado, used the movie piracy apps installed on their tablet devices by Victra employees to infringe copyright protected material as instructed by Victra employees.

70. Plaintiff was injured and suffered damages as a result of Boylan's and Wolf's conduct and thus Defendants' conduct.

## VI. FIRST CLAIM FOR RELIEF
### (Intentional Inducement)

71. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

72. Plaintiff is the copyright owner of the Work which contains an original work of authorship.

73. Defendants intentionally induced the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to publicly perform and distribute copies of Copyrighted Works.

74. As intended and encouraged by Defendants, Popcorn Time and Show Box app connect users to sources that publicly perform and/or distribute copies of Plaintiff's Copyrighted Work. The operators of these sources directly infringe Plaintiff's exclusive rights by providing unauthorized streams and/or copies of the works to the public, including to Defendants' customers such as Gerard Prado.

75. Once the Defendants' customer has obtained a complete copy of the Plaintiff's Copyrighted Work, that particular customer also becomes another Torrent

source that delivers copies of Plaintiff's Copyrighted Works.

76. Defendants induce the aforementioned acts of infringement by supplying the movie piracy apps such as Popcorn Time and Show Box app that facilitate, enable, and create direct links between their customers and the infringing sources, and by actively inducing, encouraging and promoting the movie piracy app for blatant copyright infringement.

77. Defendants' intentional inducement of the infringement of Plaintiff's rights in its Copyrighted Work constitutes a separate and distinct act of infringement.

78. The Plaintiff did not authorize, permit, or provide consent to the Defendants to copy, reproduce, redistribute, perform, or display the Work.

79. As a result of the foregoing, Defendants violated the Plaintiff's exclusive right to: (A) Distribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and (B) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images.

80. Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

81. By engaging in the infringement alleged in this First Amended Complaint, the Defendants deprived not only the producers of the Work from income that could have been derived when this film was shown in public theaters

and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

82. The Plaintiff has suffered damages that were proximately caused by the Defendants' intentional inducement of copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

83. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

84. Defendants had actual and/or constructive knowledge of third parties' such as their customers' infringement of Plaintiff's exclusive rights under the Copyright Act.

85. Despite having said actual knowledge, Defendants have continued to promote and distribute movie piracy apps to their customers.

86. Defendants knowingly and materially contribute to infringing activity such as that of Gerard Prado.

87. Defendants' knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

15

88. As a direct and proximate result of the infringement to which Defendants knowingly and materially contribute, Plaintiff is entitled to injunctive or other equitable relief as provided by 17 U.S.C. § 512(j)(1)(B)(i).

89. Defendants' actions are a direct and proximate cause of the infringements of Plaintiff's Work.

90. The Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

91. Plaintiff has suffered damages that were proximately caused by the Defendants' material contribution of copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. THIRD CLAIM FOR RELIEF
### (Employer Liability for Employee's Contributory Copyright Infringement based upon Inducement under Respondeat Superior)

92. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

93. Boylan's and Wolf's intentional inducement and contributory infringement occurred within the scope of their employment to Defendant AKA. Therefore, Defendant AKA is liable for the intentional inducement and contributory infringement of Boylan and Wolf.

94. Boylan's and Wolf's inducement and contributory infringement

19-cv-323

occurred within the scope of their employment to Defendant ABC. Therefore, Defendant ABC is liable for the intentional inducement and contributory infringement of Boylan and Wolf.

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin Defendants from continuing to intentional induce and contribute to infringement of the Plaintiff's copyrighted Work;

(B) award the Plaintiff either its actual damages and any additional profits of the Defendants pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages jointly against Defendants pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(C) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(D) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiffs hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, January 10, 2020.

        CULPEPPER IP, LLLC

        /s/ Kerry S. Culpepper
        Kerry S. Culpepper
        Attorney for Plaintiff