IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HUNTER KILLER PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> AKA WIRELESS, INC. d/b/a VICTRA, et al., <br><br> Defendants. | CIVIL NO. 19-00323 JAO-KJM <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR TO CHANGE VENUE |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR TO CHANGE VENUE**

This action arises from Defendants AKA Wireless, Inc. d/b/a Victra's ("AKA") and ABC Phones of North Carolina d/b/a Victra's ("ABC") (collectively, "Defendants") alleged promotion of piracy apps to customers and inducing them to infringe upon Plaintiff Hunter Killer Productions, Inc.'s ("Plaintiff") copyright in the movie, Hunter Killer.  Defendants move to dismiss Plaintiff's claims, or alternatively, to transfer this case to the United States District Court for the Eastern District of North Carolina.  For the following reasons, the Court GRANTS Defendants' Motion to Dismiss the First Amended Complaint or to Change Venue. ECF No. 41.

BACKGROUND

A.    Factual History

This action concerns the purported intentional inducement and contributory copyright infringement committed by Defendants' employees. Plaintiff alleges that Defendants' employees promoted movie piracy apps at Victra stores for the purpose of infringing its copyright. ECF No. 22 ¶ 42. Plaintiff identifies two employees who engaged in this conduct: Sabrina Boylan ("Boylan") from the El Paso, Texas Victra store and Taylor Wolf ("Wolf") from the Kahului, Hawai'i store. Id. ¶¶ 22–29. According to Plaintiff, Boylan and Wolf promoted piracy apps to encourage customers to purchase devices, then installed piracy apps such as Popcorn Time and Show Box on the devices and instructed customers how to use the apps to watch free movies. Id. ¶¶ 43–56.

Boylan allegedly enticed Gerard Prado ("Prado") to purchase a Samsung T387 Galaxy Tablet with the promise of free movies, and installed Popcorn Time on the device at the El Paso Victra store. Id. ¶¶ 48, 54. Prado subsequently used Popcorn Time to download all or a portion of Hunter Killer while he was in Hawai'i. Id. ¶ 57.

Wolf reportedly encouraged Kazzandra Pokini ("Pokini") to purchase a new phone and/or service by offering Pokini a free tablet and informing Pokini that she could use the tablet to watch free movies. Id. ¶¶ 50–51. After Pokini completed

the purchase, Wolf installed the Show Box app on the tablet at the Kahului store and showed Pokini and her husband how to watch movies. *Id.* ¶ 55–56. The Pokinis then used Show Box to download copies of copyright protected content. *Id.* ¶ 58. Plaintiff does not allege what content the Pokinis downloaded, nor when it was downloaded.

Plaintiff alleges that Defendants knew that their employees were promoting and distributing piracy apps to customers due to allegations against Wolf in prior litigation. *Id.* ¶¶ 62–63. Plaintiff further claims that Boyle's and Wolf's conduct fell within the scope of their employment and that Victra benefited from said conduct. *Id.* ¶ 66.

B.  Procedural History

Plaintiff commenced this action on June 24, 2019 against Prado and Doe Defendants only. On August 23, 2019, the Court approved a Stipulated Consent Judgment Between Plaintiff and Defendant Gerard Prado, which resolved all claims against Prado. ECF No. 14.

On January 10, 2020, Plaintiff filed a First Amended Complaint ("FAC"), asserting the following claims: (1) intentional inducement (Count 1); (2) contributory copyright infringement (Count 2); and (3) respondeat superior liability for employees' contributory copyright infringement based on inducement (Count 3). ECF No. 22. Plaintiff requested that the Court permanently enjoin Defendants

from continuing to intentionally induce and contribute to the infringement of Hunter Killer; award actual damages, additional profits, or statutory damages; and impose attorneys' fees and costs. *See id.* at 17.

On February 19, 2020, Plaintiff filed a Motion for Preliminary Injunction. ECF No. 35. Five days later, Defendants filed this Motion. ECF No. 41.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).  If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

Defendants move to dismiss this action for failure to state a claim, or alternatively, to transfer it to the Eastern District of North Carolina.

As a preliminary matter, the Court addresses Plaintiff's objection to Exhibits 3 and 4 to the Motion. The disposition of this Motion does not require consideration of any exhibits submitted by the parties, and the Court relies on none. Therefore, the Court need not make any determinations regarding judicial notice.

A.  Secondary Copyright Infringement

Defendants argue that they cannot be liable as a retailer for their employees' promotion of piracy apps under contributory infringement or vicarious infringement. The Supreme Court has identified contributory infringement and vicarious infringement as two categories of secondary copyright infringement. "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (footnote and citations omitted). The Copyright Act does not expressly impose liability for infringement committed by another but these secondary liability doctrines "emerged from common law principles and are well established in the law." *Id.* (citations omitted).

For secondary liability to attach, a plaintiff must establish direct infringement by third parties. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("Secondary liability for copyright infringement does

not exist in the absence of direct infringement by a third party." (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)). To establish direct copyright infringement, "a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (footnote and citation omitted). A plaintiff must additionally "show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citation omitted).

In the factual background section of the FAC, Plaintiff alleges that Prado downloaded at least a portion of Hunter Killer using Popcorn Time on the tablet purchased at the El Paso Victra store. ECF No. 22 ¶¶ 48, 57. Within the intentional inducement claim, Plaintiff alleges that piracy apps connect users to sources publicly performing/distributing Hunter Killer and the operators of those sources directly infringe Plaintiff's copyright by streaming and/or providing copies of Hunter Killer to the public, including customers like Prado. *Id.* ¶ 74.

Plaintiff also alleges that the Pokinis used Show Box to download copies of copyright protected content. *Id.* ¶ 58. However, Plaintiff does not allege that the Pokinis violated its copyright with respect to Hunter Killer. And at the hearing, Plaintiff's counsel confirmed that the Pokinis did not download Hunter Killer but

nevertheless insisted that Plaintiff could premise liability on the Pokinis' general infringing conduct. The Court rejects Plaintiff's contention that it can base claims on conduct not involving its exclusive rights, as contributory infringement is predicated on underlying direct infringement. Direct infringement requires a violation of Plaintiff's exclusive copyright. *See Ellison*, 357 F.3d at 1076. And under a theory of inducement liability, causation requires "that the product or service at issue was used to *infringe the plaintiff's copyrights*." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1037 (9th Cir. 2013) (emphasis added). Consequently, Plaintiff's secondary copyright infringement claims cannot rest on allegations related to the Pokinis.[1]

1. Contributory Infringement

Plaintiff asserts an intentional inducement claim (Count 1) and a contributory copyright infringement claim (Count 2). Contributory infringement occurs when a defendant intentionally induces or encourages direct infringement. *See Grokster*, 545 U.S. at 930. The Supreme Court "has defined two categories of contributory liability: 'Liability . . . may be predicated on actively encouraging (or inducing) infringement through specific acts . . . or on distributing a product

---

[1] Defendants argue that because they settled matters regarding the Pokinis in prior litigation, issue/claim preclusion bar relitigation here. It is unnecessary to reach this argument given the absence of allegations that the Pokinis violated Plaintiff's exclusive rights under the Copyright Act, and the Court's determination that secondary infringement claims cannot be based on the Pokinis' conduct.

distributees use to infringe copyrights, if the product is not capable of substantial or commercially significant noninfringing uses.'" *Amazon.com*, 508 F.3d at 1170 (quoting *Grokster*, 545 U.S. at 942) (some internal quotation marks and citations omitted).

"Contributory liability requires that a party '(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.'" *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) (quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)); *see also Giganews*, 847 F.3d at 670.

### a. Knowledge of Infringement

Plaintiff only alleges that "Defendants had actual and/or constructive knowledge of third parties' . . . infringement of Plaintiff's exclusive rights" with respect to its contributory copyright infringement claim. ECF No. 22 ¶ 84. The knowledge prong "requires more than a generalized knowledge by [Defendants] of the possibility of infringement." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Contributory infringement liability requires "actual knowledge of specific acts of infringement." *Id.* (quoting *Napster*, 239 F.3d at 1021). Plaintiff's generalized allegation that Defendants had active/constructive knowledge of customers' infringement is insufficient. For this reason alone, Plaintiff's intentional inducement and contributory copyright infringement claims

9

should be dismissed. But even if Plaintiff adequately pled knowledge, the Court would dismiss the claims.

> b. Intentional Inducement or Material Contribution
>
>> i. Intentional Inducement

Defendants argue that Plaintiff's intentional inducement claim must be dismissed because it is not a cause of action and/or is duplicative of Plaintiff's contributory infringement claim. Plaintiff posits that *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* created intentional inducement as a basis for secondary copyright infringement that is distinct from contributory infringement or vicarious infringement. While *Grokster* concerned an inducement theory, the Supreme Court did not recognize it as an additional secondary copyright infringement cause of action. *See Grokster*, 545 U.S. at 930 (identifying contributory and vicarious infringement as the two categories of secondary copyright infringement). Instead, it addressed inducement as a subset of contributory infringement. *See id.* & n.9 (finding unnecessary the evaluation of the petitioner's vicarious liability theory because it addressed the inducement theory of contributory infringement).

The Ninth Circuit has similarly identified intentional inducement as a theory of contributory infringement liability, with material contribution as the other. *See VHT*, 918 F.3d at 745–46; *Giganews*, 847 F.3d at 672 (describing inducement as an

10

"alternate theory of contributory infringement liability"); *see also Fung*, 710 F.3d at 1029 & n.11 (noting that the district court held Fung liable for contributory infringement under an inducement theory and did not evaluate Fung's liability under the material contribution theory); *Visa*, 494 F.3d at 795 ("In *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, the Supreme Court adopted from patent law the concept of 'inducement' and found that '[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement.'" (alteration in original) (footnote and citation omitted)). Thus, intentional inducement is not a standalone claim; it is a theory of contributory infringement liability.

The inducement theory has four elements: "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Giganews*, 847 F.3d at 672 (quoting *Fung*, 710 F.3d at 1032). Under an inducement theory, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 936–37. It "premises liability on purposeful, culpable expression and conduct," not "mere knowledge of infringing potential or of actual infringing uses" or "ordinary acts incident to product distribution." *Id.* at 937. Affirmative "steps . . . taken to encourage direct

11

infringement" include "advertising an infringing use or instructing how to engage in an infringing use," as they "show an affirmative intent that the product be used to infringe." *Id.* at 936 (alteration in original) (citations omitted); *see VHT*, 918 F.3d at 745–46.

Plaintiff alleges that:

> 73. Defendants intentionally induced the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to publicly perform and distribute copies of Copyrighted Works.
>
> 74. As intended and encouraged by Defendants, Popcorn Time and Show Box app[s] connect users to sources that publicly perform and/or distribute copies of Plaintiff's Copyrighted Work. The operators of these sources directly infringe Plaintiff's exclusive rights by providing unauthorized streams and/or copies of the works to the public, including to Defendants' customers such as Gerard Prado.
>
> . . . .
>
> 76. Defendants induce[d] the aforementioned acts of infringement by supplying the movie piracy apps such as Popcorn Time and Show Box . . . that facilitate, enable, and create direct links between their customers and the infringing sources, and by actively inducing, encouraging and promoting the movie piracy app[s] for blatant copyright infringement.

ECF No. 22 ¶¶ 73–74, 76. As noted above, Plaintiff failed to allege that Defendants had knowledge of Prado's infringement, which is a necessary element of contributory liability. Plaintiff therefore fails to state a claim for contributory copyright infringement by inducement.

Assuming Plaintiff alleged that Defendants had the requisite knowledge, its allegations regarding inducement are nevertheless deficient.  Plaintiff claims that Defendants' employees installed piracy apps on devices sold to customers and those apps created direct links between said customers and infringing sources that provide streams and/or copies of copyrighted works.  As pled, Plaintiff has not sufficiently alleged that Defendants intended—through the purported installation of piracy apps on devices it sold—for the devices to be used to infringe Plaintiff's copyright in Hunter Killer.[2]  Accordingly, the Court DISMISSES Plaintiff's intentional inducement claim (Count 1).  Because amendment could potentially cure the foregoing defects, the Court grants leave to amend.  However, if Plaintiff elects to amend, intentional inducement should be presented as a theory of contributory copyright infringement.

        ii.        Material Contribution

Plaintiff's contributory copyright infringement claim (Count 2) is founded on a material contribution theory.  "Material contribution turns on whether the activity in question 'substantially assists' direct infringement," *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) (citation

---

[2] Where, as here, Defendants are corporations, "the relevant intent must be that of the entity itself, as defined by traditional agency law principles; liability cannot be premised on stray or unauthorized statements that cannot fairly be imputed to the entity." *Fung*, 710 F.3d at 1038 (footnote and citation omitted).

omitted), and requires "direct connection to that infringement." *Visa*, 494 F.3d at 796.  With respect to this claim, Plaintiff alleges, in pertinent part:

> 85.    Despite having said actual knowledge, Defendants have continued to promote and distribute movie piracy apps to their customers.
>
> 86.    Defendants knowingly and materially contribute to infringing activity such as that of Gerard Prado.
>
> 87.    Defendants' knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.
>
> . . . .
>
> 89.    Defendants' actions are a direct and proximate cause of the infringements of Plaintiff's Work.

ECF No. 22 ¶ 85–87, 89.  These allegations do little more than recite the elements of a contributory infringement claim.  Plaintiff's factual background section of the FAC includes certain facts that might bolster this claim, but Plaintiff has not included those specific facts and allegations within the claim.  It is not the Court's responsibility to piece together Plaintiff's factual and legal allegations, scattered throughout the FAC, to ascertain whether, when taken together, they sufficiently state a claim.  For these reasons, Plaintiff's contributory copyright infringement claim (Count 2) is DISMISSED.  The Court grants leave to amend because it is possible these defects could be cured by amendment.

B.  <u>Respondeat Superior Liability</u>

Plaintiff's final claim seeks to impose respondeat superior liability upon Defendants for their employees' contributory copyright infringement. Plaintiff alleges:

> 93.  Boylan's and Wolf's intentional inducement and contributory infringement occurred within the scope of their employment to Defendant AKA. Therefore, Defendant AKA is liable for the intentional inducement and contributory infringement of Boylan and Wolf.
>
> 94.  Boylan's and Wolf's inducement and contributory infringement occurred within the scope of their employment to Defendant ABC. Therefore, Defendant ABC is liable for the intentional inducement and contributory infringement of Boylan and Wolf.

ECF No. 22 ¶¶ 93–94. This claim fails on multiple grounds. First, notwithstanding Plaintiff's criticism of Defendants for characterizing this claim as one for vicarious infringement, Defendants are correct that allegations of this nature are ordinarily pled as a vicarious infringement claim.[3] Indeed, "vicarious infringement's roots lie in the agency principles of *respondeat superior*," while "contributory infringement is based on tort-law principles of enterprise liability and imputed intent." *Visa*, 494 F.3d at 802. To the extent Plaintiff seeks to impose

---

[3] Because Plaintiff insists that it is not asserting a vicarious infringement claim, the Court will not discuss whether Plaintiff has adequately pled vicarious infringement.

liability based on a respondeat superior theory other than vicarious infringement, it has not identified the legal authority for such a claim.[4] Respondeat superior lability is a state/common law concept,[5] and counsel admitted this at the hearing. Yet Plaintiff's bases for jurisdiction are 28 U.S.C. §§ 1331, 1338, without any jurisdictional allegations that would authorize the inclusion of this state-law claim.

Second, a respondeat superior liability claim is duplicative of Counts 1 and 2. Plaintiff's contributory infringement claim against Defendants—improperly pled as two separate counts of contributory infringement and intentional inducement, *see supra* Part A—is premised on Defendants' employees' conduct. But because Plaintiff does not name any employees as defendants, it effectively seeks to twice impose liability against Defendants based on the same underlying facts—once for contributory infringement and intentional inducement, and again for respondeat superior liability for contributory infringement and intentional inducement. At the hearing, Plaintiff's counsel conceded that this is not technically a separate claim but was pled in this manner to highlight the fact that the allegations against Defendants are for their employees' conduct.

---

[4] Counsel conceded that he has no authority for a respondeat superior theory in the contributory infringement context.

[5] *See Yamane v. Pohlson*, 111 Hawaiʻi 74, 78 n.7, 137 P.3d 980, 984 n.7 (2006) ("Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business." (citation omitted)).

Third, the allegations against Wolf are improper because they pertain to infringement by the Pokinis and, as stated above, Plaintiff did not (and, as it conceded, cannot) assert that the Pokinis downloaded Hunter Killer.  A claim cannot be predicated on conduct having no relationship to Plaintiff.  For these reasons, the Court DISMISSES Plaintiff's respondeat superior claim (Count 3).  The Court declines to authorize amendment because of Plaintiff's counsel's admission that this is not properly asserted as a cause of action and this claim is duplicative of Plaintiff's other claims.[6]

Plaintiff's deadline to file a second amended complaint is August 10, 2020.  Any amended pleading must address the deficiencies identified herein and may not add additional parties or claims.  Failure to comply with these requirements will result in the dismissal of this action.

Given the dismissal of the FAC, Plaintiff's Motion for Preliminary Injunction is moot.

---

[6] Neither does the Court authorize amendment to assert vicarious infringement because Plaintiff disclaimed reliance on that theory.  *See, e.g.*, ACLU v. Masto, 670 F.3d 1046, 1065 (9th Cir. 2012) ("[A] party taking a position in litigation precludes that party from later assuming an inconsistent position on the same issue[.]" (citing *Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997)).

C.      Transfer Venue

Defendants alternatively seek transfer to North Carolina if this case survives the pleading stage.  Insofar as the Court grants leave to amend, it declines to decide whether transfer is appropriate at this time.  Defendants may renew their request if Plaintiff files an amended pleading and the circumstances warrant transfer.

## CONCLUSION

In accordance with the foregoing, the Court GRANTS Defendants' Motion to Dismiss the First Amended Complaint or to Change Venue.  ECF No. 41.  The FAC is DISMISSED.  Counts 1 (intentional inducement) and 2 (contributory copyright infringement) are DISMISSED WITH LEAVE TO AMEND.  Count 3 is DISMISSED.  If Plaintiff elects to file an amended pleading, it must do so by August 10, 2020.  Failure to timely file an amended pleading in conformance with this Order will result in the dismissal of the action.

In light of the dismissal of the FAC, Plaintiff's Motion for Preliminary Injunction is MOOT.  ECF No. 35.

//

//

//

//

//

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, July 17, 2020.

*/s/ Jill A. Otake*
Jill A. Otake
United States District Judge

CV 19-00323 JAO-KJM; *Hunter Killer Prods., Inc. v. AKA Wireless, Inc., et al.*; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR TO CHANGE VENUE